**Philip S. SHAPIRO, Plaintiff,**

v.

**Chief Judge Lawrence H. COOKE and Associate Judges Matthew J. Jasen, Domenick L. Gabrielli, Hugh R. Jones, Sol Wachtler, Jacob D. Fuchsberg and Bernard S. Meyer as the Court of Appeals of the State of New York, Defendants.**

No. 82–CV–487.

United States District Court,
N.D. New York.

Oct. 27, 1982.

McGinn & Brown, P.C., Albany, N.Y., for plaintiff; Arthur F. McGinn, Jr., Albany, N.Y., of counsel.

Robert Abrams, Atty. Gen. of N.Y., Albany, N.Y., for defendants; David B. Roberts, Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This is an action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of 22 NYCRR § 520.9(a), which sets forth the standards for admission to the New York State bar without examination. Specifically, plaintiff disputes the rule's requirement for five years of experience in lieu of successful completion of the bar examination, insofar as it fails to credit as "actual practice" the time spent in the performance of legal services by New York State employees admitted to the bars of other states. Plaintiff claims that § 520.9(a) denies him rights secured under the Equal Protection Clause, U.S. Const. amend. XIV, § 1, and the Privileges and Immunities Clause, U.S. Const. article IV, § 2 and discriminates against interstate commerce, U.S. Const. article I, § 8, cl. 3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Before this Court are plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment. Fed.R. Civ.P. 56.

### II

Part 520 of Title 22 of the NYCRR sets forth the rules which have been promulgated by the New York Court of Appeals for admission of attorneys to practice law in this state, as authorized under New York Judiciary Law § 53. Under these regulations and New York Judiciary Law § 90, the function of examining and admitting candidates for the bar is performed primarily by the New York State Board of Law Examiners and the New York Supreme Court Appellate Divisions. However, the Court of Appeals retains two functions under Part 520. Under 22 NYCRR § 520.12, the Court of Appeals may "vary the application or waive any provision of these rules where strict compliance will cause undue hardship on the applicant," and, correspondingly, under § 520.9(a)(2)(i)(d), the court may certify that a combination or cumulation of service satisfies the requirement of five years of experience for admission without examination. With the exception set forth in § 520.9(a)(2)(i)(d), the Appellate Division determines all applications for admission without examination.[1]

---

1. 22 NYCRR §§ 520.2 through 520.8 set forth the requirements for admission to the bar upon satisfactory completion of the bar examination.

22 NYCRR § 520.9 sets forth the requirements for admission without examination, and provides in part:

The facts here are uncontroverted. On March 8, 1982 plaintiff applied to the New York Court of Appeals for a determination that his combined or cumulative legal experience qualified him for admission to the New York bar without examination, pursuant to 22 NYCRR § 520.9. In his petition, plaintiff represented that he had been a domiciliary of the State of New York since 1980, that he was admitted to the bar in the State of Maryland on December 30, 1976, that he had practiced law in that state from December, 1976 to January, 1980, and that, since January 14, 1980, plaintiff had served as an Intervenor Attorney for the New York State Consumer Protection Board. Plaintiff applied to the Court of Appeals, pursuant to § 520.9(a)(2)(i)(d), for a determination that his three years of actual practice in Maryland, combined with his two years and two months of experience as an Intervenor Attorney, was the equivalent of five years of "actual practice" at the bar of the jurisdiction where he was admitted. By letter dated March 23, 1982, the Clerk of the Court of Appeals informed plaintiff that his application was denied on the ground that "[e]mployment in New York State by the Consumer Protection Board as an Intervenor Attorney is not actual practice in the contemplation of Rule 520.-9(a)(2)(i)(a)."

On April 7, 1982, plaintiff petitioned for reargument or reconsideration of the court's determination. In the plaintiff's second petition, plaintiff represented that he had performed substantially the same functions in Maryland as an "Assistant People's Counsel" as he was performing in New York as an Intervenor Attorney. The plaintiff contended that on July 12, 1979 and in February, 1982, the court had permitted the admission of attorneys who possessed less than five years actual practice in their states of admission, but possessed additional experience in New York as administrative hearing officers for the Public Service Commission. The plaintiff represented that he had been recruited for employment with the New York State Consumer Protec-

520.9 Admission without examination. (a) General. In its discretion the Appellate Division may admit to practice without examination an applicant who:

(1) has been admitted to practice in the highest law court in any other state or territory of the United States or in the District of Columbia or has been admitted to practice as an attorney- and counselor-at-law or the equivalent in the highest court in another country whose jurisprudence is based upon the principles of the English Common Law; and

(2)(i) while admitted to practice as specified in paragraph (1) of this subdivision, has actually practiced for a period of at least five years:

(a) in its highest law court or highest court of original jurisdiction in the state or territory of the United States, in the District of Columbia or in the common law country where admitted; or

(b) in Federal military or civilian legal service in a position which requires admission to the bar for the appointment thereto or for the performance of the duties thereof; or

(c) in legal service as counsel or assistant counsel to a corporation in the state or territory of the United States, the District of Columbia or in the common law country where admitted; or

(d) in a combination or cumulation of service among the above categories of practice or legal service even if the government service, civilian or military, was not in a jurisdiction in which the applicant was admitted to practice, where the Court of Appeals has determined that such five years of combined or cumulative service is the equivalent of the practice required in clause (a) of this subparagraph; or

(ii) is a graduate of and has received a first degree in law from an approved law school as defined in section 520.3(b) of this Part and, for a period of at least five years immediately preceding the application for admission without examination, has been employed in this State or in any other state or territory of the United States or in the District of Columbia as a full-time member of the law faculty teaching in a law school or schools on the approved list of the American Bar Association and has attained the rank of professor or associate professor; and

(3) has had the substantial equivalent of the legal education which would have been required under section 520.3 of this Part, or its predecessor section or sections, to qualify applicant to take the New York State bar examination at the time of applicant's admission to practice in such other state, territory, district or common law country, or at the time of application for admission under this section; and

(4) is over 26 years of age.

tion Board, and that his decision to accept employment was influenced by his knowledge of the court's determination of July 12, 1979. The Court of Appeals rejected these arguments and denied plaintiff's second petition by letter dated April 20, 1982.

Plaintiff did not seek judicial review of the Court of Appeals' administrative determination in the state courts. However, on May 21, 1982, plaintiff initiated this action pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief striking down § 520.9(a) as repugnant to the Commerce Clause, Privileges and Immunities Clause, and Equal Protection Clause of the United States Constitution, insofar as it applies to attorney-employees of New York State who are admitted to practice in other states. In addition to this § 1983 action, plaintiff has applied to the United States Supreme Court for review of the Court of Appeals' determination of his individual application by way of writ of certiorari pursuant to 28 U.S.C. § 1257.[2]

### III

As a threshold matter, defendants argue that this Court should decline to exercise jurisdiction over the plaintiff's claims, so that a state court of competent jurisdiction might have an opportunity to construe § 520.9. Defendants contend that, in passing upon the plaintiff's application pursuant to § 520.9, the Court of Appeals acted in an administrative, not judicial, capacity. The court's power to regulate the admission of attorneys to the New York bar was delegated to it by the Legislature pursuant to New York Judiciary Law § 53, and does not arise under the court's judicial power, conferred under New York Constitution article VI, § 3.

This administrative determination, defendants maintain, was subject to review in the state courts under Article 78 of the New York Civil Practice Law and Rules, which provides for judicial review of a determination made by any governmental body or officer. Defendants further maintain that plaintiff could have challenged the Court of Appeals' administrative determination by way of a state declaratory judgment action[3] or a state court review of the rules governing admission to practice. Therefore, defendants argue, since constitutional issues at bar rest upon an unsettled interpretation of state law, and since federal court construction here of rights defined under a complex state regulatory scheme would interfere with state efforts to establish coherent policy in a matter of substantial state concern, abstention in this case is warranted and plaintiff should seek state court review of the administrative determination at issue here.[4]

This Court rejects defendants' abstention contentions. Abstention is a court created doctrine first articulated in 1941 in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Although the doctrine has expanded in several different forms since *Pullman*, it is still broadly defined as a doctrine "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, [and it] is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

■ The Supreme Court has confined the circumstances appropriate for abstention to

**2.** *Shapiro v. Cooke, petition for cert. filed,* —— U.S. ——, 103 S.Ct. 133, 74 L.Ed.2d 114 (1982).

**3.** N.Y.Civ.Prac.Law § 3001.

**4.** Defendants concede that plaintiff may be confronted with a statute of limitations defense

in the context of an Article 78 proceeding or declaratory judgment action at this juncture. However, defendants maintain that the policies served by the abstention doctrine are not nullified by plaintiff's alleged failure to seek timely state court review of the Court of Appeals' April 20, 1982 administrative determination.

three categories, none appropriate for the present case. *Colorado River Water Cons. Dist. v. United States, supra,* 424 U.S. at 814–17, 96 S.Ct. at 1244–46. First, "[a]bstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Id.* at 814, 96 S.Ct. at 1244. *See, e.g., Lake Carriers Ass'n. v. MacMullen,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). However, in the present case there are no ambiguities in § 520.9 for state courts to resolve, and "absent issues of state law that might affect the posture of the federal constitutional claims—this Court has uniformly held that individuals seeking relief under 42 U.S.C. § 1983 need not present their federal constitutional claims in state court before coming to a federal forum." *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 678 n. 5, 54 L.Ed.2d 618 (1978). *See, e.g., Patsy v. Florida Bd. of Regents,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Section 520.9 is clear, and the plaintiff has not raised any state law issue regarding its application; accordingly, abstention under the *Pullman* doctrine is not proper here. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 481, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977).

Second, abstention is appropriate when, "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971); *Douglas v. City of Jeannette,* 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324] (1943); state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, *Huffman v. Pursue, Ltd.,* 420 U.S. 592 [95 S.Ct. 1200, 43 L.Ed.2d 482] (1975); or collection of state taxes, *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293 [63 S.Ct. 1070, 87

L.Ed. 1407] (1943)." *Colorado River Water Cons. Dist. v. United States, supra,* 424 U.S. at 816, 96 S.Ct. at 1245. Since there are no pending state proceedings involving plaintiff and § 520.9, this branch of the abstention doctrine is clearly inapplicable. *See also Middlesex County Ethics Committee v. Garden State Bar Assoc.,* —— U.S. ——, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

The third branch of the abstention doctrine, known as *Burford*-type abstention, taking its name from *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is not as clearly defined as the other two. *See generally* 17 Wright & Miller, *Federal Practice and Procedure* § 4244 (1978). *Burford* abstention "is . . . appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Cons. Dist. v. United States, supra,* 424 U.S. at 814, 96 S.Ct. at 1244. *See also Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Alabama Pub. Serv. Comm'n v. Southern R. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). The present case does not fit within *Burford*-type abstention since this action does not present a difficult question of state law; indeed, it does not present *any* question of state law.

For these reasons, abstention here is inappropriate.[5] Accordingly, this Court will now turn to the merits of plaintiff's claims.

### IV

Plaintiff first attacks the New York rule as a denial of equal protection of the law, in violation of the fourteenth amendment. He argues that the distinction between applicants who have practiced five years in the state in which they were licensed and those who have practiced for five years in a state in which they are not licensed bears no rational relation to the apparent objective of the New York rule—to insure the competence of attorneys entering New

---

5. *But see Brown v. Supreme Court of Virginia,* 359 F.Supp. 549, 551 (E.D.Va.1973).

York practice without taking the bar examination. Plaintiff contends that, had he worked in Maryland as an "Assistant People's Counsel" for the past five years, he would clearly satisfy the requirements of the New York rule. Therefore, even though the work he has performed for the Consumer Protection Board in New York is substantially similar to the work he might have performed in Maryland, plaintiff contends that he has been denied admission under § 520.9 because the actual location of his practice has not been in a state in which he is licensed.[6]

The Equal Protection Clause commands that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1947). The initial discretion to determine classifications resides with the states and they "must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Pyler v. Doe,* —— U.S. ——, ——, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Therefore, in applying the Equal Protection Clause "to most forms of state action, we ... seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Id.*

The standard for review here, then, is whether there is a "rational basis" for the classification in question. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). "A state can require high standards of qualification, such as

good moral character or proficiency in its law, before it admits an applicant to the Bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). Moreover, when applying the rational basis test, this Court is free to uphold a classification based upon "a[ny] state of facts that reasonably can be conceived to constitute a distinction or difference in State policy ...." *Allied Stores v. Bowers,* 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959).

■ Here, the State has a legitimate interest in preventing professional misconduct in the practice of law. It cannot be said that a continuous period of employment in a jurisdiction which has granted a license and is concerned with the policing of its licensees is not *some* assurance of the character and fitness of those licensees when they apply for admission to another bar. Although plaintiff has practiced for over the past two years in New York, it is a state in whose courts he has not been licensed to practice and which lacks authority to revoke or suspend the license he holds. Although professional misconduct occurring in New York could be brought to the attention of Maryland, "this constitutes at best an attenuated disciplinary mechanism." *Lowrie v. Goldenhersh,* 521 F.Supp. 534 (N.D.Ill.1981).

■ Moreover, as the court in *Lowrie* points out, the rule at bar is rationally related to the state's interest in an applicant's general competency, *see Keenan v. Board of Law Examiners,* 317 F.Supp. 1350, 1361 (E.D.N.C.1970), particularly when the applicant is an alien practitioner seeking admission without taking the bar examination. Indeed, to the extent that Canon 6 and Disciplinary Rule 6–101 of the New

---

6. In addition, plaintiff argues that there is no rational basis for crediting legal service in a jurisdiction other than the state of admission for federal attorney-employees and law professors, but not crediting plaintiff's experience as an attorney-employee of the State of New York.

York Code of Professional Responsibility[7] require that an attorney act competently in his practice, competency is crucial to questions of moral character and fitness, and is especially relevant when the applicant is a practicing attorney. When the usual test of competency for applicants, the bar examination, is waived as a requirement for admission:

> [t]he state can look for alternative methods to insure that an applicant is competent. The ... requirement that an alien practitioner have practiced for an extended period of time in his licensing state provides for a reasonable means to discover factors bearing upon his competency, ... and the job of the licensing state to police an attorney is made simpler when the attorney practices in that state.[8]

*Lowrie v. Goldenhersh, supra,* 521 F.Supp. at 539. *See, e.g., Ricci v. State Board of Law Examiners,* 427 F.Supp. 611, 618 (E.D. Pa.1977). *But see Stein v. Coleman,* No. K80–445–CA4, (W.D.Mich. June 25, 1982). For the foregoing reasons, § 520.9 is rationally related to a legitimate state purpose, and is not violative of the equal protection clause.

■ Moreover, this Court finds that the rule does not constitute a violation of the Privileges and Immunities Clause of the United States Constitution. The standard for review of an Article IV, § 2 challenge is to be found in the Supreme Court's most recent application of the Privileges and Immunities Clause in *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978). That case involved an attack upon the constitutionality of an Alaskan statute giving residential preference in oil and gas pipeline employment. Citing *Ward v. Maryland,* 79 U.S. (12 Wall.) 418, 20 L.Ed. 449 (1871)[9] and *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948),[10] the court developed a two-step analytical framework. The first inquiry is whether there is a substantial reason for the discrimination beyond residence. This is also stated as a requirement for a showing that the non-residents "constitute a peculiar source of the evil" the state seeks to address. *Hicklin v. Orbeck, supra,* 437 U.S. at 525–26, 98 S.Ct. at 2487. The second inquiry is whether there is a reasonable relationship between the means chosen and the end desired. The relationship must be "substantial", *id.* 437 U.S. at 527, 98 S.Ct. at 2488, and the means selected "closely tailored" to meet the purpose, *id.* at 528, 98 S.Ct. at 2488. Here, plaintiff's privileges and immunities claim must fail, since the first prong of the *Hicklin* test has not been demonstrated.

7. New York Code of Professional Responsibility Canon 6 (1978) provides that "[a] lawyer should represent a client competently." Disciplinary Rule 6–101 requires that a lawyer shall not:
   1. Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
   2. Handle a legal matter without preparation adequate in the circumstances.
   3. Neglect a legal matter entrusted to him.

8. The exception in § 520.9 for federal attorney-employees, apparently based upon considerations of federal-state comity, is rationally based upon the premise that such individuals are actually engaged in the practice of federal law in the course of their employment, even where such services are rendered in a state other than the state of admission. The provision in § 520.9 which accepts five years of legal professorial experience in lieu of actual practice is rationally based upon the premise that such experience is sufficient to assure that the appli-

cant meets minimum standards. The plaintiff's equal protection rights are not violated simply because the rule does not afford a third exception for the category of individuals into which he falls. "[T]he Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams,* 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); *South Carolina v. Katzenbach,* 383 U.S. 301, 331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966); *Railway Express Agency v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949). The mere fact that the rule here treats one category of applicants differently than others is irrelevant.

9. *Ward* involved the licensing of non-resident merchants.

10. *Toomer* involved the legality of the cost of a non-resident shrimping license that was 100 times that of a resident license.

As the Supreme Court in *Hague v. C.I.O.,* 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423 (1939) observed, the intent of the Privileges and Immunities Clause is to prevent "a state from discriminating against citizens of other states in favor of its own." Here § 520.9 does not discriminate against the out-of-state practitioner since the rule actually confers a preference on the migrant attorney, a preference which one who has been a life-long citizen of New York could not avail himself of. Simply because the plaintiff cannot qualify for this preference, but must qualify on the same terms as the life-long citizen of New York, gives him no right to complain. "So long as a state does not subject a migrant attorney, seeking the right to practice in the state, to no [sic] more onerous requirements than those imposed on its own citizens seeking such [a] right, it cannot be said that the state has violated" the Privileges and Immunities Clause. *Hawkins v. Moss,* 503 F.2d 1171, 1180 (4th Cir.1974), *cert. denied,* 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975).

■ Nor does the rule interfere with plaintiff's right to interstate travel to pursue his profession. The constitutional "right to travel" under the Equal Protection and Privileges and Immunities Clauses of the Constitution does not imply that a citizen "carries with him from state to state an absolute right ... to practice ... a profession ...." *Id.* at 1178–79. Admission to practice in one state is not automatic admission to practice in the courts of another state.[11] *Application of Wasserman,* 240 F.2d 213, 214–15 (9th Cir.1956). The Supreme Court, in *Shapiro v. Thompson,* 394 U.S. 618, 638 n. 21, 89 S.Ct. 1322, 1333 n. 21, 22 L.Ed.2d 600 (1969), noted that residency requirements to obtain a license to practice

a profession are not necessarily penalties upon the exercise of the constitutional "right to travel". *See also Memorial Hospital v. Maricopa County,* 415 U.S. 250, 259 n. 13, 94 S.Ct. 1076, 1082 n. 13, 39 L.Ed.2d 306 (1974). This Court finds that the requirement that an applicant to the New York bar reside and practice for a period in the state in which he is licensed is not so burdensome as to constitute a "penalty" against the exercise of the constitutional right of interstate travel.[12]

■ Finally, plaintiff alleges that § 520.9 discriminates against interstate commerce. The burden to show such discrimination rests on the plaintiff who is challenging the validity of this rule. *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979); *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977). The plaintiff must demonstrate that the rule favors residents vis-a-vis nonresidents, either on its face or in its practical effects. *Service Machine & Shipbuilding Corp. v. Edwards,* 617 F.2d 70, 74 (5th Cir.1980).

■ Here, the plaintiff has failed to meet his burden of showing such discrimination. Moreover, this Court agrees with defendants' argument that § 520.9 actually encourages and enhances interstate commerce by exempting qualified· attorneys from passing the bar examination and allowing their admission on motion. This argument is especially compelling because of the well settled rule that it is within a state's prerogative to require all applicants to the bar to take and pass its bar examination. *See, e.g., Attwell v. Nichols,* 466 F.Supp. 206 (N.D.Ga.1979), *aff'd,* 608 F.2d 228 (5th Cir.

11. "[L]icenses to practice law ... have no extraterritorial effect or value and can vest no right in the holder to practice law in another state." *Hawkins v. Moss, supra,* 503 F.2d at 1175–76.

12. *See, e.g., Zobel v. Williams,* —— U.S. ——, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (Alaska dividend distribution plan favoring long-time residents violates equal protection and the right to travel); *Memorial Hospital v. Maricopa County, supra,* 415 U.S. at 257–59, 94 S.Ct. at

1081–82 (denial of "basic necessities of life" including non-emergency hospitalization and medical care a violation of constitutional rights); *Dunn v. Blumstein,* 405 U.S. 330, 340–42, 92 S.Ct. 995, 1002–1003, 31 L.Ed.2d 274 (1972) (denial of right to vote violates right to travel); *Shapiro v. Thompson, supra,* 394 U.S. at 638 n. 21, 89 S.Ct. at 1333 n. 21 (denial of "basic necessities of life" found to violate right to travel).

1979), *reh. denied,* 612 F.2d 579 (5th Cir. 1979). Therefore, if a state may constitutionally require all applicants to take the examination, the Commerce Clause is not offended by a rule which permits some, but not all, out-of-state attorneys to be admitted on waiver of the examination.[13]

## V

Accordingly, plaintiff's motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted.

It is so Ordered.

13. Moreover, as pointed out in the above discussion of equal protection, the rule effectuates a legitimate local public interest and therefore overcomes any minimal burden on interstate commerce that might exist. *See Minnesota v. Clover Leaf Creamery,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).