Robert A. SOLOMON, and New Haven Legal Assistance Association, Inc., Plaintiffs,

v.

Herbert L. EMANUELSON, Jr., Chairman, Standing Committee on Recommendations for Admission to the Bar of New Haven County, et al., Defendants.

Civ. No. N–79–58.

United States District Court,
D. Connecticut.

Feb. 29, 1984.

Michael O. Sheehan, New Haven Legal Assistance Assoc. Inc., New Haven, Conn., for plaintiffs.

James R. Greenfield, Greenfield, Krick & Jacobs, P.C., New Haven, Conn., John D. LaBelle, LaBelle, Rothenberg & LaBelle, Manchester, Conn., for defendants.

## RULING ON PLAINTIFFS' OBJECTION TO MAGISTRATE'S RULING

DALY, Chief Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This civil rights suit, brought pursuant to 42 U.S.C. Section 1983, concerns a constitutional challenge to a state bar admission rule, namely Section 21(4) of the Connecticut Practice Book. That rule requires lawyers seeking admission to the Connecticut Bar without examination to be Connecticut residents for at least six months before their applications for admission will be processed. When this suit commenced in 1979, plaintiff Robert A. Solomon was an experienced Pennsylvania attorney in good standing and employed by plaintiff New Haven Legal Assistance Association ("NHLAA"). On moving to Connecticut to work for NHLAA, Mr. Solomon had sought admission without examination to the bar of this state. Defendants Herbert L. Emanuelson Jr., et al., members of the Standing Committee on Recommendations for Admission to the New Haven County Bar, refused to file Mr. Solomon's application in accordance with Section 21(4). After re-

quests for waiver of the six-month waiting rule proved unsuccessful, plaintiffs filed suit for damages as well as declaratory and injunctive relief. The parties filed cross-motions for summary judgment and the Court referred those motions to Magistrate Arthur H. Latimer. In his ruling, Magistrate Latimer held the six month waiting rule of Section 21(4) to be unconstitutional and invalid under the Privileges and Immunities Clause, and thereby granted plaintiff's motion for summary judgment as to constitutional liability. No declaratory or injunctive relief was granted on the premise that such measures were unnecessary since Section 21(4) was under review by responsible state officials who would not likely "ignore" the ruling of this Court. Ruling on Pending Motions at 286. Defendant's cross motion for summary judgment was likewise granted on the issue of immunity. Magistrate Latimer found that the defendants were "at a minimum" entitled to a qualified immunity and that such an immunity would apply here, since the defendants were simply acting in a ministerial role, and in good faith, in carrying out the rules of the Superior Court. *Id.* at 286.

Plaintiffs have objected to the Magistrate's Ruling on several counts. First, plaintiffs seek an award of nominal damages to recognize their constitutional deprivations. Second, plaintiff NHLAA seeks injunctive relief against further enforcement of Section 21(4) to ensure the free and full use of its staff and hiring practices. Third, plaintiff NHLAA seeks a declaratory judgment to "clarify" the Magistrate's Ruling of unconstitutionality. Finally, plaintiffs request that this Court retain jurisdiction to determine their claims for attorney's fees under 42 U.S.C. Section 1988.

### II. DISCUSSION

#### A. *Standing*

■ Before proceeding to the merits of the plaintiffs' objections, it is necessary to consider issues of standing. Since this litigation began, Mr. Solomon has been admit-

ted to the Connecticut Bar, and he therefore concedes his claims for injunctive and/or declaratory relief are "moot." Memorandum in Support of Objection at 3. *But see Lane v. Reid,* 559 F.Supp. 1047, 1052 (S.D.N.Y.1983) (holding that certain claims for declaratory relief survive challenges of mootness).

Plaintiff NHLAA, however, asserts a different legal stance. Since 1982, it has hired one attorney who was subject to the six-month waiting rule and, as of November 1983, was considering another who would have been subject to the rule if hired. Memorandum in Support of Objection at 3. NHLAA further alleges that enforcement of the rule caused them and continues to cause them to invest extra resources to manage and supervise its staff attorneys who are waiting to satisfy the residency requirement. First Amended Complaint at Paragraph 25; Supplemental Affidavit at 2.

In light of these facts, the Court finds NHLAA has the requisite standing to assert its claims. The alleged inability to use fully an attorney's services for six months constitutes an "actual injury" which is necessary for standing. *See Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Moreover, the fact that NHLAA hired an attorney after Mr. Solomon who was likewise subject to the rule demonstrates that its injury was not an isolated one, but capable of repetition. Indeed, the injury is "capable of repetition yet evading review" since the six-month waiting period invariably passes before the plaintiff can fully litigate its claim. *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). It is thus apparent that the "mootness" of Mr. Solomon's claims for declaratory and injunctive relief does not extend to plaintiff NHLAA.

### B. *Nominal Damages*

■ Plaintiffs' claim for nominal damages rests on a recent Second Circuit case which awarded nominal relief to victims of procedural due process violations, notwithstanding any subsequent finding of qualified immunity. *McKenna v. Peekskill Housing Authority,* 647 F.2d 332, 336 (2d Cir.1981). Despite the *McKenna* ruling, which permits, but does not require, nominal relief where qualified immunity is found, the Court in this case finds no reason to depart from the general rule that denies all damage relief where a good faith defense is established. *See Aristocrat Health Club of Hartford v. Chaucer,* 451 F.Supp. 210 (D.Conn.1978). Unlike the defendants in *McKenna* who adopted and enforced their own intrusive regulations, defendants in this case merely followed a rule promulgated by the State Superior Court. Also, at the time of the complained-of enforcement, the rule's constitutionality was unclear, so that defendants could not be expected to know of its invalidity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court therefore agrees with the Magistrate's finding that defendants good faith defense presently shields them from all damage liability, including nominal relief.

### C. *Declaratory and Injunctive Relief*

■ Defendants' good faith immunity from damages does not bar declaratory and injunctive relief. *Chinese For Affirmative Action v. Leguennec,* 580 F.2d 1006, 1008 (9th Cir.1978). It is therefore appropriate to view this action as if it were brought solely for those remedies. *See Aristocrat Health Club of Hartford, supra,* 451 F.Supp. at 213 (citations omitted).

■ This Court has recognized that declaratory relief is always a matter of the Court's discretion. *Baker v. Regional High School No. 5,* 476 F.Supp. 319, 324 (D.Conn.1979). The standards for granting such relief may therefore vary, but the Second Circuit has elaborated that the granting of a declaratory judgment is proper only (1) where the judgment will serve a useful purpose in clarifying the legal relations at issue; or (2) where it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. *Maryland Casualty ·Co.*

*v. Rosen,* 445 F.2d 1012, 1014 (2d Cir.1971). In the present case, plaintiff NHLAA seeks a declaration of unconstitutionality primarily to "clarify" the Magistrate's Ruling. *See* Objection at 2. The Court finds that ruling sufficiently clear; indeed even the defendants now state that Section 21(4) runs "contrary to the guarantees of the Privileges and Immunities Clause." First Memorandum in Opposition to Objection at 3. However, given the defendants' continued enforcement of the waiting rule and plaintiff NHLAA's recurring injury, it is apparent that some further measure should be taken. Declaratory judgment offers a reasonable solution in that it will provide collateral estoppel effect to the Magistrate's Ruling of unconstitutionality, making that ruling binding in any subsequent litigation between the parties. *See* C.A. Wright, *The Law of Federal Courts,* Section 100, at 677 (4th ed. 1983), citing *Restatement Second of Judgments,* Section 33 (1982). Also, while not deciding this issue, it should be noted that defendants' continued enforcement of Section 21(4) in the face of a federally-issued declaratory judgment of unconstitutionality may very well constitute bad faith conduct that would deprive them of their qualified immunity from damages. A declaratory judgment would serve a useful purpose towards the resolution of this controversy and is therefore appropriate under the circumstances. *See Smith v. Metropolitan Property & Liability Ins.,* 629 F.2d 757, 763 (2nd Cir.1980) (Mansfield, J., dissenting).

■ That plaintiff NHLAA has received a declaratory judgment does not also entitle it to injunctive relief, however. The Second Circuit has recognized that an injunction is an "extraordinary" remedy, *Quinn v. Aetna Life & Casualty,* 482 F.Supp. 22, 28 (D.C.N.Y.1979), *affirmed* 616 F.2d 38 (2nd Cir.1980) that is designed to "deter and not to punish." *Electronic Specialty Co. v. International Controls Corp.,* 409 F.2d 937, 947 (2d Cir.1969). Indeed, the Supreme Court has displayed a similar attitude by writing: "At the conclusion of a successful federal challenge to a state statute or local ordinance, a district court can generally protect the interests of a plaintiff by entering a declaratory judgment, therefore the stronger injunctive medicine will be unnecessary." *Doran v. Salem Inn,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975).

With these considerations in mind, the Court finds it unnecessary to grant injunctive relief. As stated above, a declaratory judgment provides defendants with sufficient incentive to stop enforcing Section 21(4), since continued enforcement of the rule might very well subject them to liability for damages. Moreover, the Superior Court appears to be taking steps on its own to remove any residency requirements in its rules which may violate the Constitution. *See John White In Re. Admission to the Bar,* No. 288445, slip op. (Superior Court Conn. January 27, 1984). This "trend" militates against an injunction at this time. Finally, if not most importantly, the judges of the Superior Court, who ultimately admit a candidate to the bar, have not, for whatever reason, been joined as defendants in this action. Consequently, it is not clear that the injunction against the Standing Committee, which only acts in an administrative capacity, would remedy the plaintiff's injury. The Court in its discretion therefore declines to grant an injunction.

### D. *Attorney's Fees*

■ Because plaintiffs have successfully litigated the substantive issue of constitutional liability, the Court finds them to be prevailing parties entitled to reasonable attorney's fees on their successful claims. *See McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983). The Court will retain jurisdiction to determine the amount of these fees after further briefing by the parties. The plaintiffs should file their application on or before March 30, 1984.

### III. CONCLUSION

The Court, having read and reviewed plaintiffs' objection to Magistrate Latim-

er's ruling, hereby grants plaintiffs' claim for a declaratory judgment. Injunctive relief and nominal damages are denied. The Court retains jurisdiction to determine the amount of attorney's fees to be awarded.

It is SO ORDERED.

## APPENDIX

### RULING ON PENDING MOTIONS

The instant civil rights suit, cf. 42 U.S.C. § 1983, challenges the validity of a Connecticut state bar admission rule on constitutional grounds. Plaintiff Robert A. Solomon was an experienced Pennsylvania attorney in good standing when engaged by the New Haven Legal Assistance Association. He promptly moved to Connecticut and sought admission to the practice of law in this state under Section 21 of the Connecticut Practice Book, which essentially provides for admission without examination on a showing of "good moral character" and "at least five years" of law practice experience in another state. Section 21(4), however, also requires that the attorney be "an actual resident of Connecticut for not less than six months immediately preceding the application" for such admission. Since that rule creates a waiting period before commencement of the application process, Mr. Solomon's application was initially not accepted even for any screening or verification purposes. This suit for equitable relief and damages was instituted after requests for "waiver" of the six month waiting period proved unsuccessful. On cross-motions for summary judgment, it does appear on balance that such a waiting period represents unjustifiable discrimination, an unreasonable impediment to pursuit of the newcomer's livelihood, contrary at the least to the guarantee of the Constitution's Privileges and Immunities Clause, Art. IV, § 2, that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States".

A state naturally has strong interests in regulating the local practice of law, particularly since attorneys are so involved in the state courts' administration of justice. Yet in this area, as in any other, there are constitutional limits to state rule-making power, see, e.g., *In re Griffiths*, 413 U.S. 717 [93 S.Ct. 2851, 37 L.Ed.2d 910] (1973). All state bar admission requirements, for example, surely "must have a rational connection with the applicant's fitness or capacity to practice law", *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 239 [77 S.Ct. 752, 756, 1 L.Ed.2d 796] (1957), in order to withstand constitutional challenge.

Federal courts are of course empowered to act on such a civil rights challenge, cf. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, [482–86, 103 S.Ct. 1303, 1315–1316, 75 L.Ed.2d 206] (1983), with immediate recourse to the federal forum indeed said to be "the usual procedure in cases where state admission requirements have been attacked on constitutional grounds", *Tang v. Appellate Division of the New York Supreme Court, First Department*, 487 F.2d 138, 141 (2 Cir.1973), *cert. denied*, 416 U.S. 906 [94 S.Ct. 1611, 40 L.Ed.2d 111] (1974). Under the Civil Rights Act, the disputed constitutionality of a state law is generally meant to be tested in federal court without requiring a first resort to state courts or administrative bodies, see, e.g., *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 [102 S.Ct. 257, 73 L.Ed.2d 172] (1982), cf. also *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 491 [100 S.Ct. 1790, 1798, 64 L.Ed.2d 440] (1980). The defendant state bar officials and court clerk, charged with enforcement of the six months' residence rule in the first instance, do request abstention, but there are no exceptional circumstances warranting a refusal to act on the merits of a claim of denial of constitutional rights—i.e., no ongoing state judicial proceedings, compare *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 [102 S.Ct. 2515, 73 L.Ed.2d 116] (1982), no potentially dispositive question of state law, cf. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 [61 S.Ct. 643, 85 L.Ed. 971] (1941). See, e.g., *Shapiro v.*

*Cooke*, 552 F.Supp. 581, 584–585 (N.D.N.Y. 1982), *aff'd*, 702 F.2d 46 (2 Cir.1983) (*per curiam* ).

Turning to the merits, defendants ultimately offer no adequate rationale for the six months' residence rule in question, which imposes a waiting period during which the veteran lawyer moving to Connecticut cannot even *begin* to apply for admission to practice before the state courts. The general requirement of Connecticut residence for local bar admission is not challenged in this case, compare, e.g., *Gordon v. Committee on Character and Fitness*, 48 N.Y.2d 266 [422 N.Y.S.2d 641], 397 N.E.2d 1309 (1979). Nor is the five years' experience requirement, the latter rule at least affording potential basis in actual past performance for assessment of character and competence, see *Shapiro v. Cooke, supra*, 552 F.Supp. at 586–587. Further addition, however, of a pre-application residence waiting period of significant length yields no increased assurance of the attorney's fitness, serves no distinct beneficial purpose, and does have discriminatory impact of genuine substance.

It is not sufficient, as defendant would suggest, to note simply that the state presumably *could* demand that all applicants for bar admission undergo examination. The situation actually presented is different—the established and sensible policy of admitting to local law practice those already admitted to practice elsewhere after examination, who can demonstrate necessary attributes of good character and of competence indicated by experience. Like any other state law, that policy is necessarily open to constitutional scrutiny while in effect; however sound in principle, moreover, the current rule does appear flawed by addition of the waiting period provision in suit.

That particular requirement seems inconsistent with the Privileges and Immunities Clause, which "in effect, prevents a State from discriminating against citizens of other States in favor of its own", *Hague v. C.I.O.*, 307 U.S. 496, 511 [59 S.Ct. 954, 962, 83 L.Ed. 1423] (1939). Enforcement of the six months' waiting period does involve such discrimination: Connecticut resident lawyers in practice with a New York firm, for example, face no such obstacle to taking up the practice of law in this state as would their colleagues at the firm who chose initially to reside in the city. Although not every disparity in treatment is of constitutional moment, see, e.g., *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371 [98 S.Ct. 1852, 56 L.Ed.2d 354] (1978) (hunting license), the discriminatory measure at issue here is of fundamental importance, aimed at the very right to pursue one's livelihood, see *Hicklin v. Orbeck*, 437 U.S. 518 [98 S.Ct. 2482, 57 L.Ed.2d 397] (1978) (Alaska pipeline hiring preference).

No substantial independent justification has been advanced for such different treatment of the newcomer, cf. *id.* at 525–526 [98 S.Ct. at 2487–2488], and the measure adopted is by no means "closely tailored" to any conceivable end, as required in any event, see *id.* at 528 [98 S.Ct. at 2488]. It bears comment again that the attorney applicant will already have qualified by bar examination and practiced law in another state for five years, must demonstrate good character, will be a Connecticut resident in order to be admitted—and will in addition be granted but a temporary, one year's license at the outset, Conn.Practice Book, § 22, which may be made permanent thereafter on motion and hearing, Conn. Practice Book, § 23. In terms of any arguably legitimate state interest in regulating the bar—character, competence, *bona fide* commitment—the addition of a six-month pre-application waiting period is either superfluous or unreasonably restrictive.

Defendants urge that the rule is no longer of any consequence to plaintiff Solomon, because the waiting period has expired and he has been admitted to the Connecticut bar. Decision on the merits has still been necessary, however, for he seeks damages as a result of the rule's enforcement in his case. With the liability claim established by this Court's holding that the six-month waiting period imposed by Section 21(4) of

the Connecticut Practice Book violated Mr. Solomon's rights under the Privileges and Immunities Clause of the United States Constitution, there does remain the separate question, see, e.g., *Davidson v. Scully*, 694 F.2d 50, 52 (2 Cir.1982), of defendants' affirmative defense claim of "immunity", cf. *Gomez v. Toledo*, 446 U.S. 635 [100 S.Ct. 1920, 64 L.Ed.2d 572] (1980). However properly broad or limited their asserted "immunity" should be as a general proposition, a question which need not be addressed in this case, these particular defendants appear entitled at a minimum to the recognition of a qualified, "good faith" defense in the circumstances presented. Such a defense calls only for inquiry into "the objective reasonableness of an official's conduct", shielding officials from an award of damages when the law respecting challenged policy or conduct was not earlier "clearly established", *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [102 S.Ct. 2727, 2739, 73 L.Ed.2d 396] (1982). Despite the Court's ruling now that Section 21(4) is unconstitutional and accordingly invalid, this was just such an instance of previously unsettled law as to any and all of the constitutional claims advanced by plaintiff Solomon and his co-plaintiff employer, New Haven Legal Assistance Association, so that a grant of immunity from damages is patently appropriate.

It is correspondingly unnecessary to consider the possible merits of plaintiffs' other constitutional claims, invoking the protections of the Commerce Clause and the Fourteenth Amendment's Equal Protection guarantees. In addition, the bar admission rule at issue has long been under study by responsible officials, and modifications recently proposed and discussed; while there is no reason to delay this Court's decision further, there is no reason to suppose that decision will be ignored, and consequently no genuine need to weigh the propriety of further affirmative relief measures, or to identify the appropriate parties to any more extensive remedial proceedings.

For the reasons set forth above, plaintiffs' pending motion for summary judg-

ment as to liability is accordingly granted to the extent of this Court's ruling that Section 21(4) of the Connecticut Practice Book, imposing a six-month waiting period of Connecticut residence before an attorney can apply for admission to the bar, is invalid because contravening the Privileges and Immunities Clause of the United States Constitution. Defendants' motions to dismiss or for summary judgment are also granted on the ground of demonstrated immunity from a damage award in this instance, with the provision of distinct further equitable relief also appearing unnecessary in the circumstances.

Dated at New Haven, Connecticut, this 31st day of October 1983.

/s/   Arthur H. Latimer
ARTHUR H. LATIMER
UNITED STATES MAGISTRATE