Carol BANAS, et al.,
Plaintiffs-Appellants,

v.

John T. DEMPSEY, Defendant-Appellee.

MICHIGAN WELFARE RIGHTS
ORGANIZATION, et al.,
Plaintiffs-Appellants,

v.

John T. DEMPSEY, Defendant-Appellee.

No. 82–1546.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 27, 1983.

Decided Aug. 22, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 18, 1984.

Edward J. Hoort, Michigan Legal Services, William Burnham, Wayne State Univer-

sity Law School (argued), Detroit, Mich., Paul D. Reingold, Legal Services of Southeast Michigan, Ann Arbor, Mich., for plaintiffs-appellants.

Frank J. Kelley, Atty. Gen. of Michigan, Louis J. Caruso, Asst. Atty. Gen., Robert N. Rosenberg, Asst. Atty. Gen. (argued), Lansing, Mich., for defendant-appellee.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and HOLSCHUH, District Judge.[*]

HOLSCHUH, District Judge.

In *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court held, in a case in which the District Court had enjoined state officials from future violations of federal law under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that the Eleventh Amendment did not bar the additional relief of an order compelling the state officials to send notices to members of the plaintiff class of welfare recipients informing them of the availability of state administrative procedures to determine their eligibility for lost benefits. This appeal, a consolidation of two actions brought in the Eastern District of Michigan, presents questions involving the doctrine of mootness and, of more significance, the problem of under what circumstances a federal court can order a state official to give a *Quern*-type notice without violating the restrictions placed on Article III jurisdiction by the Eleventh Amendment.[1]

## I.

Although both cases have given rise to the same important issues, the factual history of each case warrants separate discussion.

## A.

Plaintiffs, Michigan Welfare Rights Organization (MWRO) and Gail Blessing, filed a class action complaint on April 11, 1980, seeking relief primarily under 42 U.S.C. § 1983, and challenging certain policies of defendant, the Director of the Michigan Department of Social Services (MDSS), relating to the provision of day care benefits for employed Aid to Families with Dependent Children (AFDC) recipients.

Plaintiffs alleged in count I of their complaint that by wrongfully refusing to deduct from plaintiffs' incomes child care costs necessitated by working parents' needs to be at their places of employment, defendant was depriving them of benefits to which they were entitled under Title IV–A of the Social Security Act in violation of the Supremacy Clause. In count II, plaintiffs asserted that in failing to inform them properly of their rights to claim work expenses above the standard amount and of their right to request an administrative hearing to challenge defendant's denial of benefits, defendant was violating not only

---

[*] The Honorable John D. Holschuh, Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

1. Plaintiffs in both cases seek remedies primarily under the civil rights statute, 42 U.S.C. § 1983, and the declaratory judgment statutes, 28 U.S.C. §§ 2201–02. Plaintiffs allege jurisdiction of the federal court under both 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331. Although the parties have not questioned the jurisdiction of the federal court, we note that in *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court held that 28 U.S.C. § 1343 does not provide subject-matter jurisdiction to hear a case based solely on a claim that state law conflicts with the Social Security Act, because an alleged violation of the Supremacy Clause

"does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of § 1343(3)," 441 U.S. at 615, 99 S.Ct. at 1915, and the Social Security Act is not a statute providing for "equal rights" within the meaning of § 1343(3) or "civil rights" within the meaning of 1343(4). 441 U.S. at 617–18, 99 S.Ct. at 1915–16.

In the present cases, however, the plaintiffs, in addition to the alleged violations of the Supremacy Clause, the statutory claims, also allege not "wholly insubstantial" federal constitutional (equal protection or due process) claims, which could support the court's exercise of pendent jurisdiction over the statutory claims under 28 U.S.C. § 1343, *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), apart from plaintiffs' claim of jurisdiction under 28 U.S.C. § 1331.

federal regulations but also the due process clause of the Fourteenth Amendment. Plaintiffs' third claim for relief alleged a denial of equal protection as a result of the acts alleged in count I.

Plaintiffs sought class certification, a declaratory judgment that defendant's policies and practices violated federal statutory and constitutional provisions, injunctive relief to prevent defendant from continuing to enforce the challenged practices, notification to all class members of their rights to an administrative review under state procedures for lost benefits, and attorney's fees.

Prior to October 1, 1981, federal law required a state participating in AFDC to disregard from earned income any expenses reasonably attributable to the earning of such income. This included child care expenses incurred by working parents. Plaintiffs asserted that defendant refused to permit child care costs to be considered as an allowable expense of employment in calculating budgetable earned income. Defendant contended that the state could do so because it already provided day care services to recipients without cost.

Effective October 1, 1981, Congress amended the relevant portion of the Social Security Act, 42 U.S.C. § 602(a), to provide that the state agency shall disregard from earned income expenditures, not exceeding specified amounts, required to be incurred for care of a dependent child,[2] and defendant implemented policies, also effective October 1, 1981, consistent with these amended provisions. On January 29, 1982, plaintiffs moved for summary judgment on the merits of their claim that defendant's prior policies violated pre-October 1, 1981, federal law. They also sought an order against defendant state official requiring the issuance of a notice similar in content to that approved by the Supreme Court in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Defendant, on February 1, 1982, moved to dismiss the action, arguing that the federal law change had rendered the pre-October 1, 1981, claims

moot and that the Eleventh Amendment barred any other relief, including an order requiring issuance of a *Quern*-type notice to persons who had lost benefits as a result of defendant's actions.

At the March 9, 1982, hearing on plaintiffs' motions for summary judgment and class certification and defendant's motion to dismiss, plaintiffs made no claim that state law violated the Social Security Act's child care expense provisions after October 1, 1981. Plaintiff's counsel admitted, on the record, that plaintiff's claims for declaratory and notice relief, if valid at all, related only to benefits allegedly lost prior to October 1, 1981.

The District Court on June 22, 1982, denied plaintiffs' motions for summary judgment and class certification and granted defendant's motion to dismiss the action. It is from these rulings that plaintiffs in *MWRO* appealed.

### B.

On May 11, 1981, Carol Banas and eight other named plaintiffs filed a class action complaint, seeking relief primarily under 42 U.S.C. § 1983, and challenging in count I of their complaint the constitutionality of a section of the Michigan Poor Law, which, along with policies of the defendant Director of the MDSS, required that income of stepparents be considered in determining AFDC eligibility or grant levels for stepchildren under the age of 18 who lived in the same household as the stepparent. Plaintiffs claimed the statute and policies violated the applicable provision of Title IV–A of the Social Security Act and regulations pursuant thereto.

Plaintiffs asserted in count II an equal protection violation as a result of a section of the Michigan Poor Law that allegedly required stepparents to take on a greater responsibility for support of stepchildren eligible for AFDC benefits than was required of stepparents of stepchildren who were not eligible for AFDC benefits. In count III plaintiffs alleged that the Michi-

---

**2.** *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357–933 (1981).

gan Poor Law impermissibly burdened plaintiff's rights of family privacy and free association by encouraging stepparents to move out of the home or get a divorce if they were already married and by encouraging prospective stepparents not to marry.

Plaintiffs contended in count IV that defendant's policies permitted dependent children and their caretaker relatives, except for stepparents, to deduct from gross earned income all actual expenses of producing that income. State regulations were alleged to require eighty percent of the gross earnings of a stepparent to be automatically counted as available income without allowing for any work expense deductions. Plaintiffs asserted that this distinction between the incomes of stepparents and other caretaker relatives violated the Social Security Act and federal equal protection guarantees.

Plaintiffs sought class certification, a declaratory judgment that the state statute and defendant's policies and practices violated federal statutory and constitutional provisions, injunctive relief to prevent defendant from continuing to enforce the challenged law and practices, notification to all class members of their rights to an administrative review under state procedures for lost benefits, and attorney's fees.

On May 28, 1981, plaintiffs filed a motion for a preliminary injunction, seeking to enjoin defendant from enforcing the challenged policies and practices regarding stepparents' incomes. The District Court granted plaintiffs' motion for a preliminary injunction, which ruling was then appealed to this Court.

Effective October 1, 1981, and before the appeal from the District Court's preliminary injunction could be heard, Congress amended the relevant portion of the Social Security Act, 42 U.S.C. § 602(a), to provide that income of stepparents living in the same household as the child shall be counted for the purposes of determining eligibility and amount of benefits for AFDC.[3] As a result of this change in the law, the parties stipulated to amend the preliminary injunction order, making its prospective effect valid only up to October 1, 1981. The District Court amended the preliminary injunction order to comport with the parties' stipulation, and on October 27, 1981, defendant voluntarily dismissed his appeal of the preliminary injunction order.

Defendant, on March 19, 1982, filed a motion to dismiss the action, arguing that plaintiffs' action was mooted by the amendment to the Social Security Act and that the Eleventh Amendment was a bar to the issuance of any orders sought by plaintiffs. Plaintiffs, on April 9, 1982, filed their motion for summary judgment, seeking a declaration that the defendant's pre-October 1, 1981, policies violated the Social Security Act's requirements before that date and an order compelling the issuance of a notice similar in content to that approved by the Supreme Court in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

At the hearing conducted on April 13, 1982, plaintiffs admitted that the change in federal law mooted their claims for injunctive relief after October 1, 1981. Nevertheless, plaintiffs did not abandon their motions for class certification and summary judgment.

On June 22, 1982, the District Court issued its Memorandum Opinion and Order denying plaintiffs' motions for summary judgment and class certification and granting defendant's motion to dismiss the action. Plaintiffs appealed this decision jointly with the decision in the *MWRO* case.

## II.

The District Court relied on both the mootness doctrine and the Eleventh Amendment in granting defendant's motions to dismiss both the *MWRO* case and the *Banas* case. The District Court concluded that the October 1, 1981, amendments to the Social Security Act rendered plaintiffs' claims moot. Although the Dis-

---

**3.** *See supra* note 2.

trict Court did not develop its reasoning concerning the Article III "case or controversy" requirement, it apparently relied upon plaintiffs' admissions that they were not claiming any violation of federal law by defendant after October 1, 1981.

With respect to the request for an order directing the sending of a notice to persons who had lost benefits as a result of defendant's actions, the type of notice discussed in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the District Court concluded that the notice relief authorized by the Supreme Court in *Quern* had to be ancillary to prospective relief already granted. Finding that "plaintiffs have not obtained and could not obtain any prospective relief upon which to base an ancillary order requiring *Quern* type notice," the District Court held that the Eleventh Amendment barred any order requiring notice to the putative classes in these cases. Finally, the District Court, in light of these rulings, denied the class certification motions as moot.

### III.

The threshold issue presented by these consolidated appeals is whether the change in the law effective October 1, 1981, rendered plaintiffs' actions entirely moot. The mootness doctrine, one facet of the case-or-controversy requirement of Article III, has two separate components. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest ['personal stake'] in the outcome." *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980), (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)).

The primary relief sought by plaintiffs in both cases was an injunction to prevent the

defendant Director of the Michigan Department of Social Services from enforcing state practices that allegedly were in violation of plaintiffs' rights under the Fourteenth Amendment and in violation of the Supremacy Clause of the Constitution. It is clear, and plaintiffs' counsel admitted, that the change in federal law that occurred while these actions were pending rendered plaintiffs' requests for such injunctive relief moot.[4] As noted earlier, the parties stipulated to amend the preliminary injunction in *Banas*, and it was amended by the court so that it "should have no prospective effect on and after October 1, 1981."[5] Inasmuch as plaintiffs did not contend that defendant's post-October 1, 1981, practices violated any rights of plaintiffs, or that enforcement of defendant's previous policies was "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), a controversy no longer existed regarding defendant's conduct that would have permitted the granting of a *Young* injunction to force the state official to comply with federal constitutional and statutory law.

However, even though plaintiffs' primary claim for relief—an injunction to restrain conduct in violation of federal law—had become moot, it does not necessarily follow that there was no longer a case or controversy sufficient to support federal court jurisdiction under Article III of the Constitution. If, for example, plaintiffs, in addition to their claim for prospective injunctive relief, could also have asserted a claim for damages or restitution as a result of being deprived of welfare benefits, it is clear that such a claim would have saved their actions from the bar of mootness. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Powell v. McCormack*, 395 U.S.

---

**4.** "Of course, injunctive relief is no longer possible and, of course, plaintiffs can possibly stipulate to the modification of the preliminary injunction, indicating that no prospective injunctive relief would be necessary and that, of course, the injunction which had been entered, [in *Banas* ] should have no prospective effect

after October 1st." Transcript of hearing held in the District Court April 13, 1982, (Joint Appendix at 190–91).

**5.** Order Amending Preliminary Injunction, Joint Appendix at 46.

486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *McKenna v. Peekskill Housing Authority*, 647 F.2d 332 (2d Cir.1981). In apparent recognition that a claim of this nature in the present cases would have been barred by the Eleventh Amendment, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), plaintiffs made no such claim. Instead, they sought an order directing defendant to send a *Quern*-type notice to members of the putative classes and, as the predicate for such an order, a declaratory judgment that defendant's prior conduct violated federal law.

Assuming, for the purpose of resolving the threshold question of mootness, that a declaratory judgment could have been the predicate for the issuance of further relief in the form of a *Quern*-type order, it seems clear that, with respect to members of the putative class in *MWRO* who lost benefits as a result of defendant's conduct, the issues of whether the District Court should have certified the class, rendered a declaratory judgment that defendant's past conduct in denying plaintiffs' benefits was violative of federal law, and ordered the service of a *Quern*-type notice advising members of the putative class of possible claims under the state's administrative procedure statutes for the recovery of those benefits remained "live." Those who lost benefits to which they allegedly were entitled also had an interest in obtaining a resolution of that issue sufficient to satisfy the "personal stake" requirement.

The *Banas* case presents a more difficult question of whether there was any longer a "case of actual controversy"[6] in view of the fact that the named plaintiffs and many

members of the putative class received, as a result of the litigation, the benefits to which they claimed entitlement.[7] The *Banas* plaintiffs who received their benefits nevertheless contend that the issue of whether defendant's past conduct violated federal law was still "live" as to them, and that they and members of the putative class who received the benefits still had a "personal stake" in the outcome, because it was conceivable that defendant would still try to recoup, as overpayments, the benefits paid.[8] Defendant responds by pointing out that he not only has never sought to recoup any such benefits but has expressly waived any right to do so. Defendant further contends that, legally, he could not recoup benefits paid under an injunction, even if it were later determined that the injunction had been improvidently granted.

In our view, plaintiffs' assertion that defendant, contrary to his express representations and in light of his stipulation and dismissal of the appeal from the preliminary injunction, would attempt to recoup any benefits paid to the *Banas* plaintiffs or putative class members is purely conjectural. Accordingly, we conclude that, if all named plaintiffs and all putative class members had received benefits owed, there no longer would have remained in the *Banas* case "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In such a case, having received the benefits to which they claimed to be entitled after filing their lawsuit, the *Banas* plaintiffs would have been under no

---

**6.** An essential requirement for the ordering of a declaratory judgment, consistent with the jurisdictional requirement of Article III, is that there be "a case of actual controversy." 28 U.S.C. § 2201.

**7.** Apparently, many of the persons in *Banas* who received benefits pursuant to the preliminary injunction also were provided voluntarily by defendant retroactive benefits for the period during which benefits had been lost prior to the preliminary injunction.

**8.** The *Banas* plaintiffs concede that "[n]otice relief of the type contemplated for plaintiffs who lost benefits would mean little to the group who got benefits." It is argued, nonetheless, that a "different form of notice might still be appropriate," one that would simply inform them that their entitlement to the benefits received under the preliminary injunction had been adjudicated by the federal court, "so that they would know to protest any attempt at recoupment."

threat of further injury as a result of defendant's conduct, *cf. Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), and, therefore would have lacked that "personal stake in the outcome" required to assure the concrete adverseness necessary for the resolution of constitutional questions. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

The record, however, seems clear that not all members of the putative class in *Banas* did in fact receive all the benefits lost as a result of defendant's conduct allegedly in violation of federal law. It appears that during the period from the effective date of defendant's policies, March 1, 1981, to the date the preliminary injunction became effective, June 1, 1981, some members of the putative class lost benefits as a result of those policies. To the extent that there remained putative class members who allegedly had lost benefits and had not yet been reimbursed, the *Banas* case could not have been considered moot, even though the named plaintiffs themselves no longer had a personal stake in the receipt of any lost benefits. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).[9]

■ Because we conclude that the complaints in *Banas* and *MWRO* should not have been dismissed, even after the change in federal law effective October 1, 1981, on mootness grounds, we are compelled to reach the Eleventh Amendment issue. Although the existence of the required case or controversy would have enabled the District Court to exercise its jurisdiction under

Article III, the exercise of the judicial power conferred by Article III is clearly restricted, in actions brought against state officials, by the Eleventh Amendment.

## IV.

The Eleventh Amendment provides, as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Despite the limited language of the Amendment, the immunity it provides to the states was extended at an early date to suits brought by a citizen against his or her own state, *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), on the reasoning that the Amendment exemplified the broader doctrine of sovereign immunity of the states and that such immunity is a constitutional limitation on the federal judicial power established in Article III of the Constitution. *Pennhurst State School & Hospital v. Halderman*, —— U.S. ——, ——, 104 S.Ct. 900, 906, 79 L.Ed.2d 67, 77 (1984). The jurisdictional bar prevents federal court actions, in the absence of consent, against a state or one of its agencies or departments, *Florida Department of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), and suits against state officials when the state is "the real substantial party in interest," *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), regardless of the nature of the relief sought. *Cory v. White*,

---

**9.** The Federal Declaratory Judgment Act by its express language makes it clear that a court has certain discretion to grant or withhold declaratory relief. It provides, in pertinent part, that in "a case of actual controversy within its jurisdiction, ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). Decisions of the Supreme Court have estab-

lished the discretionary nature of this remedy. *Zemel v. Rusk*, 381 U.S. 1, 19, 85 S.Ct. 1271, 1282, 14 L.Ed.2d 179 (1965); *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). In the present cases, the District Court dismissed the actions on jurisdictional grounds and not as a result of exercising any discretion in the withholding of declaratory relief.

457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).

■ The present cases, brought against defendant in his official capacity as Director of the Michigan Department of Social Services, are effectively actions against the state, and would clearly be barred by the Eleventh Amendment but for the saving grace of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[10] Because *Young* created an "exception" to the sovereign immunity bar to actions against the state, permitting the present actions to be filed, it is the rationale of the *Young* doctrine that provides the basis for determining the type of relief that can now be granted in these cases. This requires a brief review of that landmark decision and the later narrowing of its reach by subsequent decisions of the Supreme Court.

### A.

In *Young,* the Court held that the Eleventh Amendment does not bar an action in federal court to enjoin a state official from enforcing a state statute that allegedly violates the Fourteenth Amendment. In what the Court has since recognized as a "fiction,"[11] the *Young* Court held that an unconstitutional enactment is "void" and thereby does not "impart to the state official any immunity from responsibility to the supreme authority of the United States." *Young,* 209 U.S. at 160, 28 S.Ct. at 454. Because the state could not authorize an unconstitutional action, the state official was "stripped of his official or representative character and [was] subjected

to the consequences of his official conduct." *Id.*[12] If the state official were truly stripped of his official or representative character and subjected to the consequences of his official conduct, then no limitation would exist on the type of relief that could be granted. The Court, however, has never so held.

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), plaintiff filed a class action seeking declaratory and injunctive relief against state officials who were administering the federal-state programs of Aid to the Aged, Blind, or Disabled in a manner inconsistent with various federal regulations and with the Fourteenth Amendment. The District Court granted a permanent injunction requiring the state officials to comply with the federal law and also ordered the state officials to pay benefits that had been wrongfully withheld. The Supreme Court agreed that *Young* permitted "that part of the District Court's judgment that prospectively enjoined [the state officials] from failing to process applications within the time limits established by the federal regulations," *id.* at 664, 94 S.Ct. at 1356, but the Court held that *Young* did not permit the awarding of retroactive benefits, even if characterized as equitable restitution.

*Edelman* made it clear that the type of relief that can be granted under the *Young* exception to the Eleventh Amendment is limited. It noted that "[t]he relief awarded in *Ex parte Young* was prospective only; the Attorney General of Minnesota was enjoined to conform his future conduct of

**10.** The Eleventh Amendment does not bar actions for money damages arising from constitutional torts committed by state officials who are then sued in their individual capacities in federal court. Such actions, seeking to impose personal liability on the individual defendants, are not considered to be actions against the state. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In the cases on appeal, although brought against defendant "individually and in his official capacity as Director of Michigan Department of Social Services," it is clear that the only claims asserted against him are in his official capacity as the state official charged with enforcement of state law and policies allegedly in violation of federal law, and

the only relief sought is declaratory, injunctive and notice relief.

**11.** *Pennhurst State School & Hosp. v. Halderman,* —— U.S. at ——, 104 S.Ct. at 911, 79 L.Ed.2d at 82.

**12.** The "well-recognized irony" of *Young* is that an official's unconstitutional conduct constitutes state action under the Fourteenth Amendment but not state action under the Eleventh Amendment. *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 685, 102 S.Ct. 3304, 3315, 73 L.Ed.2d 1057 (1982) (Stevens, J., plurality opinion).

that office to the requirement of the Fourteenth Amendment." *Id.* at 664, 94 S.Ct. at 1356. *Young,* therefore, clearly permits injunctive relief to compel state officials to comply with federal law, even if the cost of that future compliance requires the expenditure of money by the state. The "ancillary effect" on the state treasury in such cases is simply the consequence of state officials being forced to comply with federal law under a *Young* injunction. *Id.* at 668, 94 S.Ct. at 1358. The Court set forth its position as follows:

> Though a § 1983 action may be instituted by public aid recipients such as respondent, a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to *prospective injunctive relief, Ex parte, Young, supra,* and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Co. v. Department of Treasury, supra.*

*Id.* at 677, 94 S.Ct. at 1362 (emphasis added).

As the Court later pointed out in *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), *Edelman* "held that suit was proper to the extent it sought 'payment of state funds ... as a necessary consequence of *compliance in the future* with a substantive federal-question determination....'" *Milliken,* 433 U.S. at 289 [97 S.Ct. at 2762] (emphasis added). The *Milliken* Court described this exception to the Eleventh Amendment as the "prospective-compliance exception" that "had its genesis in *Ex parte Young." Id.*

It is the power given federal courts under *Young* to grant injunctive relief, prospective in nature, against state officials to force compliance with federal law, that carries with it the power to issue additional orders, so long as they are ancillary to the injunction, without violating the Eleventh Amendment bar. For example, in *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978), the Court pointed out that "the ... power to impose a fine is properly treated as ancillary to the

federal court's power to impose injunctive relief."

This brings us to *Quern* and the "notice relief" authorized by that decision. Following the Supreme Court's remand in *Edelman,* the District Court ordered the state officials to send to each member of the plaintiff class a notice that informed the recipient, in pertinent part, that "you were denied public assistance to which you were entitled in the amount of $_____." *Jordan v. Trainor,* 405 F.Supp. 802, 809 (N.D.Ill.1975). The mailing containing the notice also included a returnable "Notice of Appeal," which stated in relevant part that "[t]he department illegally delayed in the processing of my AABD application, and, as a consequence, denied me benefits to which I was and am entitled." *Id.* at 810. The Seventh Circuit Court of Appeals, sitting en banc, reversed the District Court's order on the ground that it constituted a "money judgment against the state" and, therefore, controverted the Eleventh Amendment. *Jordan v. Trainor,* 563 F.2d 873, 875 (7th Cir.1977). The Court of Appeals reasoned that the language of the notice ordered by the District Court was objectionable in that it ordered, "in effect, the payment of state funds by retroactive award to the members of the plaintiff class for past action or inaction by the State of Illinois." *Id.*

The Seventh Circuit did hold, however, that on remand the District Court could order the state officials to send a "mere explanatory notice to applicants advising them that there is a state administrative procedure available if they desire to have the state determine whether or not they may be eligible for past benefits. A simple returnable notice of appeal form could also be provided." *Trainor,* 563 F.2d at 875. The Supreme Court affirmed the en banc decision of the Seventh Circuit. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Before reaching the pertinent issue in *Quern,* the Court restated the principles upon which its decision was based:

In *Edelman* we reaffirmed the rule that had evolved in our earlier cases that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. 415 U.S., at 663 [94 S.Ct. at 1355]; *see Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573 [66 S.Ct. 745, 90 L.Ed. 862] (1946); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 [65 S.Ct. 347, 89 L.Ed. 389] (1945); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47 [64 S.Ct. 873, 88 L.Ed. 1121] (1944). We rejected the notion that simply because the lower court's grant of retroactive benefits had been styled "equitable restitution" it was permissible under the Eleventh Amendment. But we also pointed out that under the landmark decision in *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. 415 U.S., at 667–668 [94 S.Ct. at 1357–1358]; see *Milliken v. Bradley*, 433 U.S. 267, 289 [97 S.Ct. 2749, 2761, 53 L.Ed.2d 745] (1977); *Scheuer v. Rhodes*, 416 U.S. 232, 237 [94 S.Ct. 1683, 1686, 40 L.Ed.2d 90] (1974). The distinction between that relief permissible under the doctrine of *Ex parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the other.

*Quern*, 440 U.S. at 337, 99 S.Ct. at 1143 (footnote omitted).

The *Quern* Court was of the opinion that the notice relief approved by the Seventh Circuit "falls on the *Ex parte Young* side of the Eleventh Amendment line rather than on the *Edelman side*." 440 U.S. at 347, 99 S.Ct. at 1148. In rejecting petitioner's argument "that giving the proposed notice will lead inexorably to the payment of state funds for retroactive benefits and therefore it, in effect, amounts to a monetary award," the *Quern* Court pointed out

that the chain of causation linking the federal court's notice relief with any monetary award "contains numerous missing links, which can be supplied, if at all, only by the state and members of the plaintiff class and not by a federal court." *Quern*, 440 U.S. at 347, 99 S.Ct. at 1149. The Court further characterized the notice relief as follows:

*The notice approved by the Court of Appeals, unlike that ordered by the District Court, is more properly viewed as ancillary to the prospective relief already ordered by the court.* See *Milliken v. Bradley*, 433 U.S. at 290 [97 S.Ct. at 2762]. The notice in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue.

*Quern*, 440 U.S. at 349, 99 S.Ct. at 1149 (emphasis added).

Although the Justices sharply disagreed on the question of whether a state is a "person" for purposes of 42 U.S.C. § 1983, all were in agreement that the notice relief in *Quern* was ancillary to the prospective relief already ordered. "The Court today correctly rules that the explanatory notice approved by the Court of Appeals below is 'properly viewed as ancillary to ... prospective relief.'" 440 U.S. at 350, 99 S.Ct. at 1150 (Brennan, J., concurring); "the explanatory notice approved by the Court of Appeals clearly is ancillary to prospective relief." 440 U.S. at 366, 99 S.Ct. at 1158 (Marshall, J., concurring).

### B.

In the present cases, plaintiffs, as a result of the change in federal law and defendant's conformance to the federal law, no longer had any ground for an injunction to prevent defendant from violating plaintiffs' rights under federal law, nor did they any longer seek such an injunction. The fundamental requirement of the *Young* doctrine, ongoing conduct by a

state official allegedly in violation of federal law, that would have empowered the District Court to issue an injunction to force compliance with federal law as an exception to the jurisdictional bar of the Eleventh Amendment was simply no longer present. Thus, at the time the District Court dismissed the complaints, the foundation that supports the granting of ancillary orders against state officials without violating the Eleventh Amendment—the basic injunction to force compliance with federal law—was not present under the circumstances of these cases.

Without the foundation of a *Young* injunction to support a notice order, plaintiffs in the present cases nevertheless sought to have the District Court declare that the past conduct of the defendant state official had violated federal law for the sole purpose of ordering the state official to send *Quern* -type notices to members of the putative classes. Plaintiffs contend that the notice relief they seek could have been ordered consistent with the Eleventh Amendment because, as they argue, "[d]espite its apparently more expansive text, the Eleventh Amendment has long been held to be a bar only to money judgments and not to injunctive relief against the states. *Edelman v. Jordan,* 415 U.S. at 663 [94 S.Ct. at 1355], citing cases." [13] This reading of *Edelman,* however, has been expressly rejected by the Court in *Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1981), in which the Court said,

> [*Edelman* ] involved a suit against state officials claiming that their administration of a particular federal-state program was contrary to federal regulations and the Constitution. Among other things, the plaintiffs sought a judgment for benefits that had not been paid them. The case was against individual officers who allegedly were violating federal law, and it therefore arguably fell outside the reach of the Eleventh Amendment under *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908). *Edelman* held, however, that the case was in effect

a suit against the State itself because a judgment payable from state funds was demanded. It was correctly noted that *Ford Motor Co. v. Department of the Treasury,* 323 U.S. 459 [65 S.Ct. 347, 89 L.Ed. 389] (1945), was authority for this result.

> *Edelman* did not hold, however, that the Eleventh Amendment never applies unless a judgment for money payable from the state treasury is sought. It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought. The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...." Thus, the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity. To adopt the suggested rule, limiting the strictures of the Eleventh Amendment to a suit for a money judgment, would ignore the explicit language and contradict the very words of the Amendment itself. *Edelman* did not embrace, much less imply, any such proposition.

*Id.* at 90–91, 102 S.Ct. at 2329 (footnote omitted).

It is only through the fiction of *Young* that injunctions may be issued against state officials and only when it is alleged that they are acting in a manner contrary to federal law. As the fiction creates the exception to the Eleventh Amendment bar, it also limits the remedies that can be awarded. A *Quern* -type order, when it does nothing more than advise plaintiffs of the Court's issuance of a *Young* injunction and administrative remedies that might be available to plaintiffs, is deemed ancillary to the Young relief permitted by the Eleventh Amendment. Consistent with the fiction of *Young,* an order compelling a state official to send such notices—if it is ancillary to the *Young* injunction and prospec-

---

**13.** Appellants' brief, at 11–12.

tive in its application—is still not an action against the state itself.

It is not enough that the requested orders in the present cases would have operated "prospectively" in the same sense that the notice in *Quern* was "prospective," that is, compelling future action that did not involve an invasion of the state treasury for the purpose of payment for past wrongdoing. Even orders and injunctions against state officials that are purely prospective in this sense are subject to the prohibitions of the Eleventh Amendment. *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1981). To escape the bar of the Eleventh Amendment, an order against state officials must be both "prospective" *and* ancillary to a *Young* injunction ordering state officials to comply with federal law—the "prospective-compliance exception." *Milliken*, 433 U.S. at 289, 97 S.Ct. at 2761. Because it is the fiction of *Young* that shelters such ancillary orders from not being orders against the state, when the basis of that fiction—the need for injunctive relief to force state officials to comply with federal law—disappears, so does the shelter.

Plaintiffs argue that the "ancillary" statement at the end of the *Quern* opinion was an "afterthought," and that the Court did not intend to require that notice relief be ancillary to a *Young* injunction previously ordered. While it is true that the Court has not always been consistent in its use of this word in Eleventh Amendment jurisprudence,[14] we do not view the statement as a thoughtless comment. To the contrary, for the reasons stated, the Court's finding of ancillarity was needed to bring the order within the penumbra of the *Young* doctrine.

Finally, plaintiffs contend that if *Quern* requires notice relief to be "ancillary" to other prospective relief, then the notice relief requested in the present case could be considered ancillary to the preliminary in-

junction entered in *Banas* or to the declaratory judgments sought in both *Banas* and *MWRO*. The difficulty with this suggestion is that both remedies are inadequate to support the additional orders requested by plaintiffs. The *Banas* injunction was expressly modified so that it would have no prospective effect after the change in law became effective on October 1, 1981. After that date, there was no conduct in violation of federal law to be enjoined, and thus the injunctive relief, which may have served as the predicate for an order requiring notice relief, had been eliminated. Any declaratory judgment in these cases would concern only the past conduct of the state official, a finding, in retrospect, that certain activities of the state official had previously violated plaintiffs' rights under federal law. In our view, such a declaration would not be prospective in nature, and therefore an order based solely on a declaration regarding the *past* conduct of the state official would not be an order falling within the "prospective-compliance" exception necessary to bring it "on the *Ex parte Young* side of the Eleventh Amendment." *Quern*, 440 U.S. at 347, 99 S.Ct. at 1148.

## V.

These cases illustrate, as the Supreme Court acknowledged in *Edelman*, that "the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." 415 U.S. at 667, 94 S.Ct. at 1357. The Supreme Court has also very recently observed that "the theory of *Young* has not been provided an expansive interpretation," *Pennhurst*, ── U.S. at ──, 104 S.Ct. at 909, 79 L.Ed.2d at 80, and the Court has emphasized the importance of recognizing that the principle of sovereign immunity of the states is a constitutional limitation on the federal judicial pow-

---

**14.** *Young* injunctions are permissible even though there is "an ancillary effect on the state treasury," *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358; a fine and attorney's fees are properly treated as "ancillary to the federal court's power to impose injunctive relief," *Hutto*, 437 U.S. at 691, 98 S.Ct. at 2574, notice relief is "ancillary to the prospective relief already ordered by the court." *Quern*, 440 U.S. at 349, 99 S.Ct. at 1149.

er established in Article III of the Constitution. *Id.* at ——, 104 S.Ct. at 906, 79 L.Ed.2d at 77.

Under the unique circumstances of the present cases, we believe the District Judge was correct in his conclusion that at the time he ruled on the motions to dismiss, any further relief was barred by the Eleventh Amendment.

The judgments are affirmed.