# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 8, 2019 Session

## HOME BUILDERS ASSOCIATION OF MIDDLE TENNESSEE v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Chancery Court for Davidson County**
**No. 17-0386-II          William E. Young, Chancellor**

_____

### No. M2018-00834-COA-R3-CV
_____

Plaintiff challenged a zoning ordinance on the grounds that it violated the Federal and State Constitutions, that it was preempted by a state law, and that it was *ultra vires* and thus void. The trial court dismissed this challenge on the grounds of ripeness, lack of standing, and because no private right of action was conferred by the statute that Plaintiff contended preempted the ordinance at issue.  While the appeal was pending, the Tennessee Legislature enacted Public Chapter 685, which Defendant contended made the case moot and accordingly moved to dismiss the appeal.  After a thorough consideration of the arguments, we grant the motion and dismiss the appeal as moot; we vacate the judgment of the trial court and dismiss the case.

**Tenn. R. App. P. 3 Appeal as of Right; Motion to Dismiss Granted; Judgment of the Trial Court Vacated and Case Dismissed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Braden H. Boucek, Nashville, Tennessee, for the appellant, Home Builders Association of Middle Tennessee.

Jon Cooper, Director of Law, Lora Barkenbus Fox, and Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson Co.

**OPINION**

## I. FACTUAL AND PROCEDURAL HISTORY

In September of 2016, the council of the Metropolitan Government of Nashville and Davidson County ("Metro") passed two ordinances that provided incentives to home builders to build affordable housing. The first ordinance, referred to as Substitute Ordinance BL 2016-133 ("the ordinance" herein), amended Title 17 of the Metropolitan Code, governing zoning, by adding provisions which adopted a policy known as Inclusionary Housing.[1] A second ordinance, BL 2016-342, amended Title 2 of the Metro Code by adding Chapter 2.213, which contained provisions allowing Metro to provide incentive grants to developers to assist with the development of affordable rental and owner-occupied units.

The Home Builders Association of Middle Tennessee ("HBAMT"), a "non-profit trade group dedicated to the promotion and protection of the home building industry in the Middle Tennessee area," filed suit on April 24, 2017. Count one of the complaint asserted that, on its face, the ordinance effectuated a taking that violated the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, section 21 of the Tennessee Constitution because it "conditions the approval of development entitlements needed to build developments over five units on a private property owner's surrender of its constitutional right to seek market rate value on their rental or for sale properties." Count two of the complaint alleged that the ordinance is preempted by Tennessee Code Annotated section 66-35-102(b). Count three alleged that Metro's enactment of the Ordinance was *ultra vires* and thus void. HBAMT sought a declaration that the ordinance "imposes an unconstitutional condition, constituting a taking without just compensation" and an injunction prohibiting enforcement of the ordinance.

Metro moved to dismiss the complaint pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure on the ground that the case was not ripe for adjudication because Plaintiff "has not sought compensation through the ordinance or state law,"

---

[1] The stated purpose of the ordinance was:

> … to promote the public health, safety and welfare by increasing the production of Inclusionary Housing units to meet existing and anticipated housing and employment needs; mitigating the impacts of increasing housing cost and provide housing affordable to low and moderate income households; providing for a range of housing choices throughout the city to avoid the concentration of poverty; and to provide a mechanism by which residential development can contribute in a direct way to increasing the supply of affordable and work force housing in exchange for additional development entitlements other than those otherwise permitted as a matter of right.

Metropolitan Gov't of Nashville & Davidson County, Tennessee, Code § 17.128.030 (2016).

because Plaintiff did not have standing, and because "there is no private right of action for Plaintiff to enforce state law." The motion was heard on August 17, and on October 31 the court entered an order holding that the case was not ripe because HBAMT had not sought compensation through the ordinance or applicable Tennessee law; that HBAMT lacked standing; and that no private right of action existed in section 66-35-102(b) to enable HBAMT to enforce that law. HBAMT's motion to alter or amend the judgment was denied. HBAMT appeals, raising the following issues for our review:

1. Whether a facial taking claim based on the unconstitutional conditions doctrine is ripe for judicial review immediately upon enactment of the challenged law or must a plaintiff first seek compensation through inverse condemnation.
2. Whether HBAMT has organizational standing to raise a facial challenge to an effective law certain to affect the property rights of HBAMT's members and inflicting immediate compliance costs before the law has been applied to any of HBAMT's members.

On October 4, 2018, Metro filed a motion requesting this Court to consider post-judgment facts and dismiss this case as moot due to the Legislature's enactment of Public Chapter 685 on April 9, 2018, which amended Tennessee Code Annotated section 66-35-102.[2] Metro contended that the statute "expressly prohibits local governments from enforcing ordinances that condition a zoning change on the allocation of affordable housing" and that, according to its terms, "any ordinances in conflict with this act are void and unenforceable." On October 25, HBAMT filed a motion to consider post-judgment facts and asserted that "this Court should consider the fact that . . . Metro . . . has not repealed its Inclusionary Zoning Ordinance (Metro Code. § 17.40.780) even after the passage of the state law that Metro argues mooted this case" and that "the continued existence of the law demonstrates that the case is anything but moot."

This Court granted both motions to consider post-judgment facts and reserved judgment on Metro's motion to dismiss the appeal.

## II. ANALYSIS

In order for a court to rule on a matter, the case must remain justiciable throughout the entire course of litigation, including appeal. *Alliance for Native American Indian Rights in Tennessee, Inc. v. Nicely et al.*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005); *State v. Ely*, 48 S.W.3d 710, 716, n.3 (Tenn. 2001). A case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000); *Ford Consumer Fin. Co., Inc. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998). A

---

[2] Public Chapter 685 is reproduced in its entirety as an appendix to this opinion.

moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy. *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945); *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 207 S.W.2d 337, 338-39 (Tenn. 1948); *Ford Consumer Fin. Co.*, 984 S.W.2d at 616.

The nature and purpose of the doctrine of mootness has been explained by the Tennessee Supreme Court:

> Tennessee's courts believed that "the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions." Accordingly, they limited their role to deciding "legal controversies." A proceeding qualifies as a "legal controversy" when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests.
>
> ***
>
> Tennessee courts do not apply the mootness doctrine mechanically. Rather, when the question of mootness is raised, they consider many factors, including the reason that the case is alleged to be moot, the stage of the proceeding, the importance of the issue to the public, and the probability that the issue will recur. Over time, the courts have recognized several circumstances that provide a basis for not invoking the mootness doctrine. These circumstances include: (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct. . . .

*Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cty.*, 301 S.W.3d 196, 203, (Tenn. 2009) (citations omitted). In specifically addressing the public interest exception, which HBAMT contends applies in this case, the Court stated:

> . . . [A]s a general rule, Tennessee's appellate courts should dismiss appeals that have become moot regardless of how appealing it may be to do otherwise. However, under "exceptional circumstances where the public interest clearly appears," the appellate courts may exercise their judgment and discretion to address issues of great importance to the public and the administration of justice. To guide their discretion, the courts should first address the following threshold considerations: (1) the public interest

4

exception should not be invoked in cases affecting only private rights and claims personal to the parties; (2) the public interest exception should be invoked only with regard to "issues of great importance to the public and the administration of justice"; (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future; and (4) the public interest exception should not be invoked if the record is inadequate or if the issue has not been effectively addressed in the earlier proceedings.

If the threshold considerations do not exclude the invocation of the public interest exception to the mootness doctrine, the courts should then balance the interests of the parties, the public, and the courts to determine whether the issues in the case are exceptional enough to address. In making this determination, the courts may consider, among other factors, the following: (1) the assistance that a decision on the merits will provide to public officials in the exercise of their duties, (2) the likelihood that the issue will recur under similar conditions regardless of whether the same parties are involved, (3) the degree of urgency in resolving the issue, (4) the costs and difficulties in litigating the issue again, and (5) whether the issue is one of law, a mixed question of law and fact, or heavily fact-dependent.

*Id.* at 210–11 (citations and footnotes omitted).

As we resolve this issue, we have taken into account the four threshold considerations. HBAMT contends that the appeal is not moot because its facial challenge is an issue of great public importance; in our analysis, the first and third considerations must also be taken into account. The purpose of the ordinance is to address "the public health, safety and welfare by increasing the production of Inclusionary Housing units"; the interest presented by HBAMT, however, is one which falls more as affecting the asserted rights of its individual members. We are persuaded that the consideration of whether the issue is unlikely to arise in the future is paramount.

In *Kentucky Right to Life, Inc. v. Terry,* the Sixth Circuit Court of Appeals addressed the question of whether a Legislature's amendment or repeal of the law at issue in a pending case rendered the case moot; the court observed:

The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case. Legislative repeal or amendment of a challenged statute while a case is pending on appeal usually eliminates this requisite case-or-controversy because a statute must be analyzed by the appellate court in its present form.

5

108 F.3d 637, 644 (6th Cir.1997) (citations omitted); *see also Green Party of Tenn. v. Hargett*, 700 F.3d 816, 822 (6th Cir. 2012); *Banas v. Dempsey*, 742 F.2d 277, 281 (6th Cir. 1984) (holding that a change in federal law while an action was pending rendered moot the plaintiffs' request for injunctive relief to prevent the defendant from enforcing allegedly unconstitutional state practices).

Public Chapter 685 expressly precludes Metro from enforcing the ordinance, i.e., taking the action that HBAMT sought to have declared unconstitutional; as such, HBAMT's members face no threat of further injury. *See Banas v. Dempsey*, 742 F.2d 277, 282–83 (6th Cir. 1984), *aff'd sub nom. Green v. Mansour*, 474 U.S. 64 (1985) (holding that the plaintiffs had "received the benefits to which they claimed to be entitled after filing their lawsuit" and were "under no threat of further injury as a result of defendant's conduct" such that they "lacked a 'personal stake in the outcome' required to assure the concrete adverseness necessary for the resolution of constitutional questions") (quoting *O'Shea v. Littleton,* 414 U.S. 488, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974); *Baker v. Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L.Ed.2d 663 (1962)). In light of the nullification of the Metro ordinance by Public Chapter 685, the issue presented is unlikely to arise in the future.[3]

## III. CONCLUSION

We conclude that the public interest exception to the mootness doctrine is not applicable to the facts of this case, as the issue presented is unlikely to arise in the future. Accordingly, we grant Metro's motion to dismiss this appeal, vacate the judgment of the trial court, and dismiss this case as moot.

RICHARD H. DINKINS, JUDGE

---

[3] HBAMT maintains that the case is not moot because "it takes a repeal or a court order to void a preempted law" and Metro has not repealed the ordinance; this argument is without merit. Repeal of the ordinance is not necessary for purposes of determining whether the case is moot. Moreover, our resolution of this case is based on our holding that Public Chapter 685 renders the ordinance unenforceable, a position advanced by Metro in the motion and affirmed by its counsel at argument.

State of Tennessee
Public Chapter No. 685
House Bill No. 1143
By Representatives Casada, Cameron Sexton, Daniel
Substituted for: Senate Bill No. 363
By Senator Haile

AN ACT to amend Tennessee Code Annotated, Title 7; Title 13 and Title 66, relative to housing sold or rented at below market value.

WHEREAS, the 109th General Assembly enacted Public Chapter 822 that prohibited a local governmental unit from enacting, maintaining, or enforcing "any zoning regulation, requirement, or condition of development imposed by land use or zoning ordinances, resolutions, or regulations or pursuant to any special permit, special exception, or subdivision plan that requires the direct or indirect allocation of a percentage of existing or newly constructed private residential or commercial rental units for long-term retention as affordable or workforce housing"; and

WHEREAS, the Metropolitan Government of Nashville and Davidson County enacted an ordinance to incentivize inclusionary housing with any residential development that seeks additional development entitlements beyond that permitted by the current zoning district, which is in direct conflict with Public Chapter 822; and

WHEREAS, it is the intent of the General Assembly to clarify that neither Nashville nor any local government has the authority to enact such an ordinance that would place requirements regarding inclusionary, affordable, or below market value housing when entitlements, variances, or any other form of permit or authorization is sought from the local government; now, therefore,

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 66–35–102, is amended by deleting subsections (b) and (c) and substituting instead the following:

(b)

(1) Notwithstanding any provision of law to the contrary, a local government unit, or any subdivision or instrumentality thereof, shall not enact, maintain, or enforce any ordinance, resolution, regulation, rule, or other requirement of any type that:

(A) Requires the direct or indirect allocation of existing or newly constructed private residential or commercial rental units to be sold or rented at below market rates;

(B) Conditions any zoning change, variance, building permit, development entitlements through amendment to the zoning map, or any change in land use restrictions or requirements, on the allocation of existing or newly constructed private residential or commercial rental units to be sold or rented at below market rates; or

(C) Requires a person to waive the person's constitutionally protected rights related to real property in order that the local government unit can increase the number of existing or newly constructed private residential or commercial rental units that would be available for purchase or lease at below market rates within the jurisdiction of the local government unit.

(2) This subsection (b) does not prohibit a local government unit from creating or implementing a purely voluntary incentive-based program designed to increase the construction or rehabilitation of workforce or affordable private residential or commercial rental units, which may include providing local tax incentives, subsidization, real property or infrastructure assistance, or any other incentive that makes construction of affordable housing more economical, so long as no power or authority granted to the local government unit to regulate zoning or land use planning is used to incentivize or leverage a person to develop, build, sell, or rent housing at below market value.

(3) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the practices prohibited by this section, may bring an action individually to recover actual damages.

SECTION 2. All ordinances, resolutions, regulations, rules, or requirements of any type of a local government unit that are in conflict with this act are void and unenforceable.

SECTION 3. This act shall take effect upon becoming a law, the public welfare requiring it.